No. 3508.

(Court of Appeal, Parish of Orleans.)

FREDERICK BOMMARIUS, vs. C. N. MAESTRI FURNITURE
MANUFACTURING CO.

Questions of fact are involved in this case.

Appeal from Civil District Court Division C.

E. H. McCaleb Jr., Plaintiff and Appellee.

Geo. Montgomery, Defendant and Appellant.

BEAUREGARD, J. On, it may be said, the eve of the forma
tion of the Defendant Co, its subsequent and actual manager and
secretary entered into a verbal contract of employment with one
Frederick Bommarius-a practical mechanical engineer-to procure
plans and specifications and supervise the erection of the required
brick work, boilers and pumps for the Company's business men-
tioned above and which Company was about to be incorporated.

This part of the work for boilers etc. fell to said manager
who states that he knew nothing about it but-it is inferred-availed
himself of the knowledge in that line of one capable of meeting his
requirements. So the verbal agreement was entered into as above
mentioned. This agreement was entered into on or about the 15th or
18th of June 1903, and terminated on the 4th or 7th of September
1903.

No stipulated price was fixed for Bommarius superintendence.
Considering however that the service of his employment was worth
$5.–per day, excluding Sundays, he sent his bill for this amount to
the Defendant Co which refused to pay same, and this suit was in-
stituted.

It is claimed in the defense that an agreement had been entered
into whereby, for the erection and the placing of one boiler, One
hundred $100.–would have been the compensation.

That this was agreed to as a sort of additional favor to one
which the Manager and Secretary had done to the Engineer. That
furthermore his superintendency had been rather detrimental
than beneficial due to his negligence and want of skill, that the
work done under his suprevision had been defective; that a furnace
of his own invention had without authority been substituted by him
to the one called for by said plans and specifications and had to be
changed in order to conform therewith at an expense of $160.–(As

315

shown in the evidence of record) that the pumps he had put in position had been defective and worked badly. In fact, and as gathered from the record, that he had lost time; had been absent from his work for about eight days and that because he had contracted with the Manager and Secretary of the Company prior to its formation, the defect in his work; the unauthorized change in the furnace to the boilers and the agreement that he should receive but $100.- which was and had been tendered to his attorney, since the suit, the Judgment in his favor for the $325 claimed, should be reversed, except of course as to the tender alluded to.

The contract entered into by Minot (the Manager) was one of employment not for himself but for a corporation about to be formed and coming within one of the duties imposed on him as one of the incorporators. The Company was therefore the responsible party and of it, was the amount for services rendered to be claimed.

The changes made in the furnace was not without the sanction of the one having charge of this part of the work, the Manager.

It does not fall within the range of probability that he, who had obtained the plans and specifications of the boilers and brick work, would have assumed to substitute his own invention of a furnace without a special authorization to which he testifies in the following language: While "we were running the brick work up under my supervision to the line of the grate bars, I said to Mr. Minot: I have a furnace which is fully economical and if you will say so I will put this furnace in while they are going up. It dont cost more in time, labor and material." And he said "all right go ahead and do it" that was my authority. That it proved defective and did not meet the requirements of the Co. can be attributed but to the one who consented to the change and who deviated from the plans and sepcifications he had approved and accepted.

Now, if any defective connection of the pumps with the pipes is, as it is urged, the record shows that the best Pump in the market was furnished; that, its repacking was merely a question of detail, and if the pipes did leak and had to be dug up, to ascertain the failure of the pump to work properly that at the very beginning the Supreindentent of the work (the Plaintiff) had called the Manager's attention to the defective work given by the plumber employed (independently of the Superintendent) by him. A good deal of evidence was adduced to show that 1—The plaintiff had begun the work of Superintending only when the boilers had been delivered i. e. July 29th 1903. That he was absent about 8 or more days from the Defendant Co's building, that therefore his claim should be reduced to a lesser number of days, that he lunched at a certain hour and consumed more time than was requisite and coming to the factory at too late an hour for him to charge for a full days work; that he left too early.

It must be borne in mind that plaintiff was not an every day

316.

laborer but a Superintendent of work, that his employment began on the 18th of June 1903 and ceased on or about the 2nd, or 3rd, or 7th, or 12th September 1903.

That the charge for his services has been testified to be worth by some witnesses and not contradicted, at from $5. to $10. per day, or that the amount he charged was warranted by the kind of work he did.

That besides the judge of the Court a qua who saw and heard the witnesses reached the conclusion that Plaintiffs claim was correctly made out and should have judgment for the amount sued for. If in fact Defendant Co has any claim against the plaintiff for the defective execution of the work he Superintended and should recover for same, it is not urged in a reconventional demand, and no reservation of their rights in this respect can preserve them.

No error is perceived in the judgment appealed from.

It is therefore ordered that the same be and it is affirmed.

June 21st, 1904.

Rehearing refused June 30, 1904.

Writ of review denied by Supreme Court.